UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Megan Focht,<br><br>      Plaintiff,<br><br>v.<br><br>Quicken Loans, LLC,<br><br>      Defendant. | CASE NO.:<br><br>**COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

### INTRODUCTION

1. The United States Congress has found abundant evidence that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system. An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers. Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers. There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's

right to privacy. Congress wrote the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, to require that consumer reporting agencies, furnishers, and other persons adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.

2. Plaintiff Megan Focht ("Plaintiff"), by and through Plaintiff's attorneys, brings this action to challenge the actions of Quicken Loans, LLC ("Defendant") regarding Defendant's unauthorized and unlawful credit inquiries.

3. Plaintiff makes these allegations on information and belief, except for those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

4. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

5. Unless otherwise stated, all the conduct engaged in by Defendant took place in South Carolina.

6. Defendant committed each of the violations stated herein knowingly, willfully, and intentionally, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

7. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant.

3. Through this Complaint, Plaintiff does not allege that any state court judgment was entered against anyone in error, and Plaintiff does not seek to reverse or modify any judgment of any state court.

### JURISDICTION AND VENUE

8. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331.

9. This Court has federal question jurisdiction because this case arises out of Defendant's violation of federal law—the FCRA.

10. Venue is proper pursuant to 28 U.S.C. § 1391 as Defendant resides in this judicial district and its principal place of business is in this judicial district.

11. Defendant is subject to the Court's personal jurisdiction, as Defendant conducts business within this judicial district and Defendant's principal place of business is in this judicial district.

12. Plaintiff is informed and believes and thereon alleges that all acts of Defendant's corporate employees as hereinafter alleged were authorized or ratified by an officer, director or managing agent of the corporate employer.

13. Plaintiff is informed and believes and, on that basis, alleges that at all times mentioned herein Defendant was the principal, agent (actual or ostensible), or employee and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which Defendant is liable to Plaintiff or the relief prayed for herein.

## PARTIES

14. Plaintiff is a natural person who resides in Myrtle Beach, South Carolina.

15. Plaintiff is a natural person whose consumer report was affected by an unauthorized inquiry.

16. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. §1681a(c).

17. Defendant is an entity with a principal place of business in Detroit, Michigan.

18. Defendant is a "person" as defined by 15 U.S.C. § 1681a(b).

19. Defendant can be served at its registered agent: The Corporation Company, 40600 Ann Arbor Road E., Suite 201, Plymouth, MI 48170.

## FACTUAL ALLEGATIONS

20. At all times relevant, Plaintiff was an individual residing within the State of South Carolina.

21. At all times relevant, Defendant conducted business in the State of Michigan.

22. Plaintiff is informed and believes, and thereon alleges, that Defendant acquired Plaintiff's credit information through an unauthorized inquiry of Plaintiff's "consumer report" as defined by 15 U.S.C. §1681a(d)(1).

23. Consumer report and credit report will be used interchangeably herein to refer to the same item, as defined by 15 U.S.C. §1681a(d)(1).

### *The Impermissible Credit Pull*

24. In the Spring of 2021, Plaintiff and her husband were considering purchasing a new home.

25. Sometime on or before May 17, 2021, Plaintiff's husband was on a phone call (the "Call") with a representative of Defendant to inquire about mortgage rates and terms.

26. On the Call, Plaintiff's husband mentioned that Plaintiff already had a mortgage that was being serviced by Defendant.

27. Thereafter, in response, the representative of Defendant requested Plaintiff's phone number, which Plaintiff's husband provided on the Call.

28. At no time did Plaintiff's husband provide consent for Defendant to pull Plaintiff's credit report on the Call.

29. Sometime after the call, on May 17, 2021, Defendant made a hard inquiry to Trans Union and retrieved Plaintiff's Trans Union credit report and financial data.

30. Then again, on or about May 18, 2021, Defendant made a hard inquiry to Trans Union as well Equifax and Experian and retrieved her credit reports and financial data from each entity.

31. As if that was not enough, on or about May 19, 2021, Defendant made yet another hard inquiry to Trans Union as well as Equifax and Experian and retrieved her credit reports and financial data from each entity.

32. Over the course of three days, Defendant made a total of seven hard inquiries to Trans Union, Equifax, and Experian.

33. Thereafter, on or about May 19, 2021, Plaintiff received a notification from Credit Karma as to the hard inquiries made by Defendant.

34. At no time before, during, or after each of the hard pulls on May 17, 18, and 19 did Plaintiff consent to Defendant pulling her credit reports.

35. At no time before, during, or after each of the hard pulls on May 17, 18, and 19 did Plaintiff's husband consent on Plaintiff's behalf to Defendant pulling her credit reports.

36. Plaintiff contacted Defendant on or about May 19, 2021 to inquire as to why Defendant pulled Plaintiff's credit reports.

37. In the following days, Plaintiff corresponded with Defendant's representatives several times by phone and email.

38. Defendant's representatives appeared to acknowledge that Defendant did not have a permissible purpose to obtain Plaintiff's credit reports and noted that Defendant has "taken the steps internally to address this matter with our Team."

39. Plaintiff did not want Defendant or the agent who pulled Plaintiff's credit reports to have access to her personal and confidential financial information contained on her credit report as of May 2021.

40. Plaintiff further did not want a "hard inquiry" on her credit, as it would lower her credit score and negatively impact her ability to receive favorable terms on future financial transactions.

### *Credit Scoring*

41. The Fair Isaac Corporation credit risk scoring system, also known as "FICO", is a ubiquitous credit scoring system and utilizes data reported by credit reporting agencies. *See* https://www.myfico.com/credit-education/credit-scores/ .

42. Defendant's hard inquiries caused Plaintiff to suffer from reduced FICO credit scores.

43. The Fair Isaac Corporation uses the data in consumer reports to calculate credit scores that it assigns to consumers.

44. The term "credit score" is a numerical value or a categorization used to predict the likelihood of certain credit behaviors, including default. *See* http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf.

45. FICO scores are calculated from credit data in a consumer's credit report that are arranged in five main categories. Those categories are identified and weighted as follows: payment history accounts for 35% of a consumer's FICO score; debt/amounts owed accounts for 30% of a consumer's FICO score; age/length of credit history accounts for 15% of a consumer's FICO score; *new credit/recent inquiries accounts for 10% of a consumer's FICO score*; and mix of accounts/types of credit accounts for 10% of a consumer's FICO score. *See* https://www.myfico.com/credit-education/whats-in-your-credit-score/.

46. A consumer's credit score impacts that consumer's cost of credit (e.g., interest rates, fees, etc.), availability of credit, ratings for insurance products, and even unsolicited credit offers, such as the opportunity to refinance a mortgage at a lower interest rate, extend financing periods, lower rate auto loans, and even zero-percent financing credit offers for in-store credit lines.

47. Inaccurate or incorrect credit reporting often results in a lower FICO (and other credit scoring model) scores, thus creating higher costs of credit for the consumer, diminished opportunities, and less purchasing power.

48. Here, causing seven hard pulls to appear on Plaintiff's credit reports has resulted in the illegitimate suppression of Plaintiff's FICO credit score and/or other credit rating model scores.

49. There is no established rule or threshold for classifying the significance of a credit score change as minor or major because the impact of a change in score is dependent on the current score; *i.e.*, a one-point change in credit score that moves the consumer from one risk tier to the next may have a large impact on the consumer's ability to receive credit, the type of credit, or rates of that credit that a consumer may receive.

50. Consistent with the FTC Study, the Fair Isaac Corporation states that inaccurate or incorrect information on a consumer's credit report can hurt their score. *See* https://www.myfico.com/credit-education/questions/fix-errors-on-credit-report/.

### *Violations of the FCRA and Plaintiff's Damages*

51. In May 2021 when Defendant pulled Plaintiff's credit reports seven times, Defendant did not have Plaintiff's authorization to pull Plaintiff's consumer reports.

52. Defendant retrieved and received Plaintiff's confidential financial information without Plaintiff's permission or authorization.

53. 15 U.S.C. § 1681b(f) provides, in part, that "[a] person shall not obtain a consumer report for any purpose unless—(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section[.]"

54. Defendant's consumer report inquiry and subsequent obtainment of Plaintiff's credit reports, without Plaintiff's consent, falls outside the scope of any permissible use or access included in 15 U.S.C. § 1681b.

55. Therefore, Defendant violated 15 U.S.C. § 1681b by obtaining Plaintiff's credit reports without a permissible purpose provided for by 15 U.S.C. § 1681b.

56. Defendant's actions were willful under 15 U.S.C. §§ 1681n because Defendant was aware of the FCRA's prohibitions on impermissibly pulling consumers' credit reports. *See Doe v. Sentech Employment Services, Inc.*, E.D. Mich. May 16, 2016) (citing *Singleton v. Domino's Pizza, LLC*, 2012 WL 245965, *4 (D. Md. Jan. 25, 2012) ("[A]ssertions that a defendant is aware of the FCRA, but failed to comply with its requirements, are sufficient to support an allegation of willfulness and to avoid dismissal.").

57. Plaintiff suffered an invasion of a legally protected interest Defendant accessed Plaintiff's highly confidential personal information on her credit reports at a time when Defendant had no right to do so.

58. Defendant's hard inquiries constitute an invasion of Plaintiff's right to privacy.

59. Plaintiff has a common law right to keep her personal credit information private. *E.g.*, Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 1155, 193 (1890).

60. By obtaining Plaintiff's credit reports, Defendant intruded upon Plaintiff's seclusion.

61. According to the Restatement (Second) of Torts § 652B, "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."

62. The common law tort of intrusion upon seclusion "does not depend upon any publicity given to the person whose interest is invaded or to his affairs." *Id.* Rather, "[i]t consists solely of an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man."

63. At common law, "[t]he intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of the photograph or information outlined." *Id.*

64. The FCRA, through 15 U.S.C. § 1681b, protects consumers like Plaintiff from the type of behavior Defendant engaged in as described in this Complaint.

65. The common law tort of intrusion upon seclusion is preempted by the FCRA, and the FCRA expressly provides that Congress made the following finding: "There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality and a respect for the consumer's right to privacy." 15 U.S.C. §1681a(4).

66. Plaintiff was impacted personally because when she discovered the actions of Defendant as described above (pulling her credit reports without any authorization), Plaintiff's privacy was invaded, and her personal and private information was disclosed to Defendant and some unknown agent of Defendant that had no right to Plaintiff's private information.

67. Plaintiff suffered significant mental and emotional distress because of Defendant's invasion of Plaintiff's privacy.

68. Plaintiff took time off work due to the significant distress she experienced from Defendant's actions.

69. Plaintiff lost sleep and experienced other physical manifestations of harm as a result of Defendant's actions, including an ulcer.

70. Plaintiff also experienced significant anxiety as a result of Defendant's actions.

71. Plaintiff is a professional in the healthcare industry and she feels that the confidential identification information contained on her credit reports could be used to impact her job negatively.

72. The injury suffered by Plaintiff is concrete because Defendant's violation of 15 U.S.C. § 1681b caused Plaintiff to suffer from significant mental and emotional distress as well as an invasion of Plaintiff's privacy.

73. In enacting 15 U.S.C. § 1681b, Congress specifically sought to protect consumers from invasions of privacy and created restrictions on access to consumers' sensitive financial information in their credit reports.

74. Further, Defendant's increased the risk that Plaintiff will be injured if there is a data breach Defendant's computer systems by acquiring additional highly sensitive information about Plaintiff and saving that information onto its computer system.

75. Additionally, as a result of several hard pulls appearing on her credit reports, Defendant caused Plaintiff's credit score to decrease, thereby harming Plaintiff's credit reputation and negatively impacting her creditworthiness.

76. Plaintiff also was forced to take affirmative steps to protect herself from further harm by Defendant.

77. Plaintiff froze her credit to prevent any other unauthorized inquiries by Defendant or anyone else that may receive Plaintiff's personal and confidential financial information from Defendant.

78. In addition, to date, despite several communications with Plaintiff regarding Defendant's impermissible pulls of Plaintiff's credit reports, as of August 2021, the hard inquiries remain on Plaintiff's credit reports.

79. As a result of a decreased credit score from the hard inquiries that remained on her report and her frozen status of her credit reports, Plaintiff has been unable to receive credit for various items and expenses.

80. As one example, Plaintiff had to pay out-of-pocket for a kitchen remodel because: (1) she would have to unfreeze her credit in order to obtain credit for the project, and (2) the significant likelihood that she would receive credit on worse terms due to the hard inquiries that persisted on her credit reports, lowering her credit scores.

81. On another occasion, when inquiring about potentially obtaining a loan for a boat, Plaintiff was advised by a representative of a bank that it may be best for Plaintiff to wait until the hard inquiries from Defendant were no longer on

her report before Plaintiff moved forward with the loan, as the hard inquiries would reduce Plaintiff's chances of approval for the loan.

82. As a result, Plaintiff suffered from fear of credit denials.

83. Plaintiff has had to alter her life and choices related to requesting and receiving credit because of Defendant's actions.

84. In addition, Plaintiff's credit reports have been accessed several times by third parties conducting account review inquiries and/or promotional inquiries while the hard pulls were present on Plaintiff's credit reports; thus, Defendant further defamed Plaintiff by causing an inaccurate picture of her credit requests that was subsequently published to third parties.

85. As such, Plaintiff is entitled to the remedies available under 15 U.S.C. §1681n and 15 U.S.C. § 1681o.

**FIRST CAUSE OF ACTION**
**THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. §1681 *et seq.* (FCRA)**

86. Plaintiff repeats, re-alleges, and incorporates by reference all above paragraphs.

87. The foregoing acts and omissions constitute numerous and multiple violations of the FCRA.

88. As a result of each and every negligent violation of the FCRA, Plaintiff is entitled to actual damages, pursuant to 15 U.S.C. §1681o(a)(1); and costs

together with reasonable attorney's fees, pursuant to 15 U.S.C. § 1681o(a)(2), from Defendant.

89. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages or damages of not less than $100.00 and not more than $1,000.00, pursuant to 15 U.S.C. §1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. §1681n(a)(2); and costs together with reasonable attorney's fees, pursuant to 15 U.S.C. §1681n(a)(3) from Defendant.

## REQUEST FOR JURY TRIAL

90. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendant:

1. A declaratory judgment that Defendant's actions as discussed herein are unlawful and an invasion of privacy;

2. Plaintiff's actual damages;

3. Statutory damages of not less than $100.00 and not more than $1,000.00 to Plaintiff, pursuant to 15 U.S.C. § 1681n(a)(1), against Defendant;

4. Punitive damages against Defendant, pursuant to 15 U.S.C. §1681n(a)(2);

5. An award of costs of litigation together with reasonable attorney's fees, pursuant to 15 U.S.C. §§ 1681n(a)(3), against Defendant; and

6. Any other relief the Court may deem just and proper.

                                                Respectfully submitted,

Date: August 31, 2021                 By: /s/ Anthony P. Chester
                                                   Anthony P. Chester
                                                   SBN: P77933
                                                 **Kazerouni Law Group, APC**
                                                 120 S. 6th St., Suite 2050
                                                 Minneapolis, MN 55402
                                                 Phone: (952) 225-5333
                                                 Email: tony@kazlg.com

                                                 ATTORNEYS FOR PLAINTIFF